UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLOS OCAMPO, ) | |
| ) | |
| Plaintiff, ) | No. 1:22-CV-01972 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| DAVID HARRIS, DAVID MACK, and ) | |
| MAX LETTERLY, ) | |
| ) | |
| Defendants. ) | |

ORDER

Carlos Ocampo, who was fired from his job as a tax specialist at the Illinois Department of Revenue (IDOR), brings this civil-rights lawsuit asserting First Amendment retaliation claims. *See* 42 U.S.C. § 1983. Ocampo also asserts state law claims for false arrest, assault, battery, false imprisonment, malicious prosecution, and conspiracy.[1] Proceeding *pro se*, Ocampo names as defendants David Harris, the Director of IDOR; David Mack, an IDOR Labor Relations Manager; and Max Letterly, an IDOR Program Administrator. R. 7, Am. Compl.[2] The Defendants move to dismiss the complaint, arguing that Ocampo's claims are barred by sovereign immunity and that his complaint fails to state a claim. R. 44, Defs.' Mot. For the reasons set forth below, the motion is granted.

---

[1]The Court has federal-question subject matter jurisdiction over the § 1983 claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

## I. Background

In deciding the Defendants' motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court also accepts as true the allegations contained in Ocampo's affidavit, R. 30, Ocampo Aff., which was submitted to support the complaint and which the Defendants agree should be considered here. *See Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988) ("The district court is entitled to consider exhibits attached to the complaint as part of the pleadings." (cleaned up)).[3]

Ocampo worked as a revenue tax specialist at IDOR. *See* Am. Compl. at 4–5; Defs.' Br. 1–2; R. 46, Pl.'s Resp. 1.[4] At some point in 2016, Vincent Cacioppo (IDOR's Chief of Enforcement) transferred, or purported to transfer, around 21 jobs from IDOR's Chicago office to its Springfield office. Ocampo Aff. ¶¶ 1, 4. According to Ocampo, this "geographical transfer" of jobs was "fabricated" by Cacioppo. *Id.* ¶ 1. But Ocampo's complaint and affidavit do not elaborate on how Cacioppo fabricated the transfer of jobs, or what it means to have "fabricated" the transfer.

In January 2021, Ocampo lodged a complaint about Cacioppo's conduct with the Illinois Office of Executive Inspector General (OEIG). Ocampo Aff. ¶ 1. Ocampo

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[4]Although Ocampo did not explicitly refer to his job title in his complaint or affidavit, the Defendants note in their brief that Ocampo was a "Revenue Tax Specialist II," and Ocampo does not dispute that characterization. Defs.' Br. 1; *see* Pl.'s Resp. The Court thus accepts that characterization as true for purposes of this Opinion.

notified OEIG that Cacioppo had transferred jobs "without following the State of Illinois procurement code." *Id.* OEIG followed up with Ocampo to investigate the complaint. *Id.* ¶ 2.

A year later, in April 2022, Ocampo was disciplined and fired from IDOR for harassment. Am. Compl. at 4. But according to Ocampo, the actual reason for his firing was his previously filed OEIG complaint about Cacioppo. *Id.* at 4–5; *see* Aff. ¶ 1; Pl.'s Resp. 1–2. Defendants Harris, Mack, and Letterly were allegedly responsible for the decision to fire Ocampo. Am. Compl. at 2, 4–5. Shortly after Ocampo was fired, he filed this § 1983 action, claiming that the Defendants had violated his First Amendment rights by unlawfully firing him in retaliation for his filing of the OEIG complaint. *Id.* Ocampo also asserted, with little elaboration, several state law claims like false imprisonment, malicious prosecution, and conspiracy to violate his civil rights. *Id.* at 5.

The Defendants move to dismiss Ocampo's *pro se* complaint, contending that Ocampo's claims are barred by sovereign immunity, or alternatively, that they must be dismissed because Ocampo has failed to properly state a claim. Defs.' Mot.

## II. Legal Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations

3

"must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Because Ocampo is proceeding *pro se*, the Court has "a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim." *Donald v. Cook Cnty. Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir. 1996). And not only must the Court view the complaint "with an understanding eye," it must also "take appropriate measures to permit the adjudication of pro se claims on the merits, rather than to order their dismissal on technical grounds." *Id.* Indeed, the Court must "ensure that the claims of a pro se litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428–29 (7th Cir. 1987) (cleaned up).

### III. Analysis

### A. Federal Law Claims

### 1. Sovereign immunity

The Defendants first argue that Ocampo's federal claims must be dismissed because they are barred by sovereign immunity.[5] The Eleventh Amendment "bars

---

[5] The Defendants also argue that Ocampo's state law claims are barred by Illinois state sovereign immunity. Br. 4 (relying on The Illinois State Lawsuit Immunity Act). The Court declines to address this argument for the reasons stated below. *See infra* Section III.B.

4

actions in federal court against ... state officials acting in their *official* capacities." *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (en banc) (emphasis added); *see Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (stating that under § 1983, there are two ways in which a party may sue government officials: in their "official capacity" or in their "individual capacity"). Ocampo, however, does not specify whether he is suing the Defendants in their official or individual capacities. *See* Am. Compl. at 1–2; Ocampo Aff. ¶¶ 3–4. Because sovereign immunity only bars actions against government actors in their official capacity, to the extent Ocampo brings claims against the Defendants in their *individual* capacity, those claims are not barred by the Eleventh Amendment.[6]

But to the extent Ocampo brings claims against the Defendants in their *official* capacities, a closer look is warranted. Ocampo seeks damages (compensatory and punitive) as well as injunctive and declaratory relief. Sovereign immunity bars a plaintiff from bringing a § 1983 official-capacity claim for damages. *See Greenawalt v. Indiana Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[T]he defense of official immunity is applicable … to liability for damages.); *see also Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue … official-capacity defendants only for injunctive relief."). So, Ocampo's claims for damages against the

---

[6]To the extent that Ocampo brings § 1983 claims for *injunctive and declaratory* relief against the Defendants in their individual capacities, his claims fail because plaintiffs may not obtain such relief against officials in their *individual* capacities. *See Greenawalt*, 397 F.3d at 589 ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Brown*, 662 F.3d at 1161 n.5 ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.").

Defendants in their official capacities are barred by the Eleventh Amendment and are dismissed.

Ocampo's official-capacity claims seeking injunctive and declaratory relief, however, are not barred by sovereign immunity. *See Hutto v. Finney*, 437 U.S. 678, 690 (1978) ("[S]tate officers are not immune from prospective injunctive relief."); *Flynn v. Sandahl*, 58 F.3d 283, 287 (7th Cir. 1995) (stating that a claim for "prospective injunctive relief … would not be barred by the Eleventh Amendment"). Although these claims are dismissed for other reasons discussed below, the Eleventh Amendment does not require dismissal of these claims.

### 2. Adequacy of the Federal Law Claims

The Defendants next argue that Ocampo's federal claims must be dismissed because Ocampo has failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). As a reminder, the remaining federal claims[7] are Ocampo's § 1983 claims seeking injunctive and declaratory relief against the Defendants in their official capacities (in effect, against the State of Illinois), and his claims for damages against the Defendants in their individual capacities.[8] These claims are based on Ocampo's allegations that the Defendants fired him in retaliation for his filing of the

---

[7]The Defendants suggest that Ocampo alleges a § 1985 conspiracy claim as well. Br. 9. The Court does not read Ocampo's complaint as raising such a claim.

[8]*See Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) ("In a suit where the complaint alleges the tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies, even if the plaintiff failed to spell out the defendant's capacity in the complaint.").

6

OEIG complaint reporting Capaccio's alleged misconduct, in violation of his First Amendment rights.

The First Amendment generally "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). When the speech is that of a public employee, like here, the First Amendment's protection of that speech may be limited. *See Kingman v. Frederickson*, 40 F.4th 597, 601 (7th Cir. 2022) ("If a public employee speaks pursuant to his 'official duties,' the First Amendment generally will not shield the individual from an employer's control and discipline because that kind of speech is—for constitutional purposes at least—the government's own speech." (cleaned up)). To establish a prima facie First Amendment retaliation claim, "a public employee first must prove that his speech is constitutionally protected." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (cleaned up).[9] For a public employee to establish that his speech is constitutionally protected, the employee must adequately allege (1) that he spoke as a citizen; and (2) addressed a matter of public concern. *Id.*; *see also Kubiak v. City of Chicago*, 810 F.3d 476, 487 (7th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

---

[9]In addition, to establish a prima facie case of First Amendment retaliation, the public employee must also establish that he "suffered a deprivation that would likely deter First Amendment activity in the future" and that the First Amendment activity was "at least a motivating factor in the Defendants' decision to take the retaliatory action." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (cleaned up).

The pleadings are unclear as to whether Ocampo's speech was constitutionally protected. For instance, in order to determine whether Ocampo "spoke as a citizen," the Court would need to determine whether Ocampo was speaking pursuant to his "official duties." *Garcetti*, 547 U.S. at 418. If he spoke pursuant to his job duties, then "the Constitution [would] not insulate [his] communications from employer discipline." *Id.* at 421. But Ocampo's complaint and affidavit do not describe what Ocampo's job duties were as an IDOR employee. Thus, although it is possible that Ocampo would be able to establish that he filed his OEIG complaint not pursuant to his job duties but instead as a private citizen, the Court cannot assess this element without a description of what those duties were. *See Kristofek v. Village of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) (stating that a court must consider whether the public employee's speech would "ordinarily [fall] within the scope of the [plaintiff]'s duties."); *id.* ("[T]o determine the scope of a public employee's official duties, we look not only to the applicable job description but also to unwritten responsibilities that the employee is expected to perform."). Therefore, the complaint and affidavit, in their current form, fail to adequately plead that Ocampo spoke not pursuant to his job duties but as a citizen.

Same with "public concern." *Forgue*, 873 F.3d at 966. On one hand, Ocampo alleges that Capaccio "fabricated" a transfer of jobs "without following the State of Illinois procurement code," which could suggest corruption or waste of public funds. Ocampo Aff. ¶ 1; *see* Pl's Resp. 6 (stating in general terms that he "alleged corruption" in an OEIG complaint). But on the other hand, without allegations explaining what

8

Ocampo means by "fabrication," the Court cannot determine whether the allegations of fabrication plausibly show that Ocampo spoke on an issue of public concern.

Ocampo's complaint, as it currently stands, cannot survive a motion to dismiss. But because there is a possibility that Ocampo could cure these deficiencies—and because of the Court's "special responsibility" to construe Ocampo's *pro se* complaint "liberally and to allow ample opportunity for amending" it, *Donald,* 95 F.3d at 555— the remaining § 1983 claims are dismissed without prejudice and with leave to amend. *See Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011) ("[G]iven [plaintiff's] pro se status and the fact that he may have been able to cure the deficiencies in his claim …, the dismissal should have been without prejudice with leave to amend.").

If Ocampo wants to proceed with this case, then he must file an amended complaint by October 16, 2023. In amending the complaint, Ocampo should take care to include adequate allegations that allow the Court to understand what Ocampo means by the purported "fabrication" of a transfer of jobs and why that transfer was unlawful; Ocampo's job duties and how his speech was outside the scope of those official duties; and how Capaccio's transfer of jobs was a matter of public concern. And to the extent Ocampo is suing for injunctive and declaratory relief against the Defendants in their official capacities, he must include allegations about "an official policy or custom [that] violated his constitutional rights." *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). The amended complaint must set forth the allegations in separately numbered paragraphs, Fed. R. Civ. P. 10(b), and must otherwise comply with the

9

requirements of Rule 10. Failure to file the amended complaint by the October 16 deadline will result in the dismissal converting to a dismissal with prejudice.

### B. State Law Claims

Ocampo also brings several claims under Illinois law, including false arrest, assault, battery, false imprisonment, malicious prosecution, and conspiracy to violate Ocampo's civil rights. Am. Compl. at 5. Because Ocampo's federal claims are dismissed, albeit without prejudice and with leave to amend, the Court declines to address the state law claims at this time. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012) (stating that "when federal claims drop out of the case," the trial court has "broad discretion to decide whether to … relinquish supplemental jurisdiction over the state-law claims"—with a "general presumption in favor of relinquishment"). If the federal claims are dismissed with prejudice, then the Court almost surely will relinquish jurisdiction over the state law claims.

### C. Sanctions

The defense has moved for sanctions based on Ocampo's emails and communications to the Defendants other than through defense counsel. R. 68, 167. The premise of the motion is the order entered on September 12, 2022, by the previously assigned judge, in which the Court ordered Ocampo "to cease any and all communications with Defendants other than through their counsel … and to observe all other applicable rules of attorney ethics and civil procedure for the duration of this lawsuit." R. 65. For now, rather than dismiss the case outright for violating the order, given

Ocampo's *pro se* status the Court instead will warn Ocampo that he **must cease communicating in any way with the Defendants except through defense counsel. Failure to comply with this order will might very well result in dismissal of the case with prejudice.** Indeed, the denial of dismissal as a sanction right now is only a denial without prejudice.

## IV. Conclusion

The Defendants' motion to dismiss is granted. Ocampo's federal claims seeking damages against the Defendants in their official capacities are dismissed due to sovereign immunity, and the claims for injunctive and declaratory relief against the Defendants in their individual capacities are also dismissed. The remainder of the federal claims—the official-capacity claims for injunctive and declaratory relief, and the individual-capacity claims for damages—are dismissed without prejudice and with leave to amend.

As a reminder, if Ocampo chooses to file an amended complaint, then it must be filed by October 16, 2023. If he does not file an amended complaint, then the dismissal will automatically convert to a dismissal with prejudice. The tracking status hearing of October 20, 2023, is reset to October 27, 2023, at 8:30 a.m., but to track the case only (no appearance is required).

ENTERED:

                s/Edmond E. Chang
              Honorable Edmond E. Chang
              United States District Judge

DATE: September 30, 2023